1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                          CENTRAL DISTRICT OF CALIFORNIA

10                                 EASTERN DIVISION

11   CYNTHIA J. REYNOLDS,                    )
                                             )
12                 Plaintiff,                )      Case  No. EDCV 12-2192 AJW
                                             )
13          v.                               )      MEMORANDUM OF DECISION
                                             )
14   CAROLYN W. COLVIN[1],                    )
     Acting Commissioner of the Social       )
15   Security Administration,                )
                                             )
16                 Defendant.                )
     _____)

17
         Plaintiff filed this action seeking reversal of the decision of defendant, the Commissioner of the
18
     Social Security Administration (the "Commissioner"), denying plaintiff's application for disability insurance
19
     benefits.  The parties have filed a Joint Stipulation ("JS") setting forth their contentions with respect to each
20
     disputed issue.
21
                              **Administrative Proceedings**
22
         Plaintiff, then aged 50, filed her application for benefits on May 12, 2009, alleging that she became
23
     disabled on January 15, 2008. [JS 2; Administrative Record ("AR") 8, 10, 32].  Plaintiff's application was
24
     denied initially and upon reconsideration. [JS 2; AR 34-38, 42-46].  Plaintiff requested an administrative
25
     hearing, which was conducted before an administrative law judge (the "ALJ") on January 5, 2011. [AR 21].
26

27
     _____
28       [1]   Carolyn W. Colvin is substituted as defendant in place of her predecessor in office, Michael
     J. Astrue. See Fed. R. Civ. P. 25(d).

1   Plaintiff was represented by counsel during the hearing and testified on her own behalf. [AR 21-31].

2   Testimony also was received from a vocational expert. [AR 30-31].  Because plaintiff's counsel submitted

3   additional medical evidence during the hearing, the ALJ left the record open and instructed counsel to file

4   a supplemental brief summarizing the evidence. [AR 29-31].  Counsel for plaintiff filed the requested brief

5   [AR 156-157], and in a written hearing decision that constitutes the Commissioner's final decision in this

6   matter, the ALJ found that plaintiff had severe impairments consisting of carpal tunnel syndrome bilaterally,

7   bilateral carpal tunnel release in 2000/2001, chronic back pain, and lumbar fusion. [AR 10, 12].  The ALJ

8   further found that plaintiff retained the residual functional capacity ("RFC") to perform light work. [AR 10-

9   11].  Taking into consideration her subjective complaints, which the ALJ found partially credible, the ALJ

10  found plaintiff was able to perform her past relevant work as a clerical worker. [AR 13-14].  Therefore, the

11  ALJ concluded that plaintiff was not disabled at any time from  January 15, 2008, her alleged onset date,

12  through December 31, 2008, her date last insured.  [AR 14].

13                                                   **Standard of Review**

14          The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial

15  evidence or is based on legal error.  Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1054 (9th Cir.

16  2006); Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002).  "Substantial evidence" means "more than

17  a mere scintilla, but less than a preponderance."  Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir.

18  2005). "It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

19  Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (internal quotation marks omitted).  The court is

20  required to review the record as a whole and to consider evidence detracting from the decision as well as

21  evidence supporting the decision. Robbins v. Soc. Sec. Admin, 466 F.3d 880, 882 (9th Cir. 2006); Verduzco

22  v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999).  "Where the evidence is susceptible to more than one rational

23  interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."  Thomas,

24  278 F.3d at 954 (citing Morgan v. Comm'r, Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)).

25                                          **Statement of Disputed Issues**

26          The disputed issues are whether the ALJ: (1) properly considered plaintiff's treating physician's

27  opinion; (2) should have obtained vocational expert testimony to support his finding that plaintiff could

28  perform her past relevant work; and (3) made a properly supported credibility finding.  [JS 2-3].

1 **Discussion**

2 **Treating "physician's" opinion**

3 Plaintiff contends that the ALJ erred in evaluating the opinion of her "treating physician," James

4 Lauerman ("Lauerman").  [JS 3-10].

5 In plaintiff's supplemental brief to the ALJ, which is included in the record, plaintiff's hearing

6 counsel implied that Lauerman was a physician by referring to him as plaintiff's"treating physician." [AR

7 156-157.]  The ALJ referred to Lauerman as "James Lauerman, M.D." and "Dr. Lauerman." [AR 13].  In

8 plaintiff's portion of the joint stipulation, plaintiff's current counsel, referring to Lauerman, frames the issue

9 as whether the ALJ properly considered plaintiff's treating "physician's" opinion.  [JS 2-3, 5].  Defendant

10 also refers to Lauerman as a doctor in the joint stipulation.  [JS 11-13].

11 Elsewhere in plaintiff's portion of the joint stipulation, however, plaintiff's counsel describes

12 Lauerman as a physician's assistant. [JS 5-7].  That is consistent with documentary evidence in the record.

13 [See AR 358 (stamp and signature of Lauerman identifying himself as a physician's assistant)].

14 The distinction between a physician and a physician's assistant is important because the latter is not

15 an "acceptable medical source" within the meaning of the regulations.  See 20 C.F.R. §§ 404.1513(a),

16 416.913(a).   Only licensed physicians, and certain other qualified specialists (licensed or certified

17 psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists) are

18 considered "[a]cceptable medical sources."  20 C.F.R. § 404.1513(a).  The ALJ may consider information

19 in the record from "other sources" (that is, sources other than an "acceptable medical source"), but ordinarily

20 is not required to give the information that same weight as information from an acceptable medical source.

21 See 20 C.F.R. §§ 404.1513(d), 416.913(d) (defining an "acceptable medical source," and explaining that

22 information from "other sources" also may be considered); Gomez v. Chater, 74 F.3d 967, 970-971 (9th

23 Cir.) (holding that the regulations permit the Commissioner to give "less weight" to opinions from "other

24 sources"), cert. denied, 519 U.S. 881 (1996); see generally Social Security Ruling ("SSR") 06-03p, 2006 WL

25 2329939, at *1-*6.  The ALJ may reject information from "other sources" by "giv[ing] reasons germane to

26 each witness for doing so." Turner v. Comm'r of Social Sec., 613 F.3d 1217, 1224 (9th Cir. 2010) (quoting

27 Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001)).

28 Plaintiff appears to acknowledge this distinction by contending that Lauerman's opinion should be

1    considered a treating source opinion because he treated plaintiff in conjunction with Dr. Jack J. Druet at the

2    Temecula Pain Management Group.  [JS 11].  The Court need not reach this issue, however, because even

3    if Lauerman's assessment could be deemed an acceptable medical source opinion, the ALJ properly rejected

4    it.

5         On July 16, 2010, Lauerman completed a three-page "Medical Opinion Re: Ability to do Work-

6    Related Activities (Physical)."  [AR 716-718].  Lauerman opined that plaintiff could lift and carry less than

7    10 pounds on either a frequent or occasional basis.  [AR 716].  He concluded that plaintiff could only stand,

8    walk, and sit for less than two hours during an eight-hour day.  [AR 716].  Lauerman also indicated that

9    plaintiff had to change her sitting and standing position, and walk every 10-15 minutes.  [AR 716-717].

10   Lauerman further opined that plaintiff would have limitations in reaching, handling, fingering, feeling, and

11   pushing/pulling, and had other limitations.  [AR 717-718].

12        In assessing the medical evidence of record, the ALJ noted that plaintiff's alleged onset date was

13   January 15, 2008, and the date she was last insured was December 31, 2008.  He therefore concluded that

14   "the only records relevant to the period at issue are records beginning on January 15, 2008 and going up to

15   December 31, 2008."  [AR 12].  The ALJ explained his assessment of Lauerman's opinion as follows:

16        I have read and considered the functional limitation assessment submitted by James

17        Lauerman, M.D., dated July 16, 2010 (Exhibit 22F).  However, there are no treatment notes

18        from Dr. Lauerman from the relevant period.  Moreover, this assessment reflects Dr.

19        Lauerman's opinion of the claimant's current limitations, which is not[2] relevant to this

20        decision.  Accordingly, the functional assessment of Dr. Lauerman is given little weight.

21   [AR 13].

22        Plaintiff makes no attempt to refute the ALJ's conclusion that there are no treatment records from

23   Lauerman within the relevant period.  Instead, plaintiff cites treatment notes completed by Lauerman in

24   2005-2006, one to two years before plaintiff's alleged onset date, and in 2010, two years after her date last

25   insured.  [JS 3 (citing AR 358, 374, 390, 395-396, 400, 430-437)].  The absence of any treatment notes from

26   Lauerman during or close in time to the relevant period is a permissible reason for giving his assessment

27

28        [2]    Plaintiff's quotation of this finding erroneously omitted the word "not."  [JS 7].

1    little weight.  See Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1464 (9th Cir. 1995) (holding

2    that the ALJ did not err in rejecting the claimant's continuing disability claim based, in part, on a lack of

3    medical care during the relevant period); Connett v. Barnhart, 340 F.3d 871, 874-875 (9th Cir. 2003)

4    (holding that the ALJ did not err in rejecting the opinion of a treating physician whose restrictive functional

5    assessment was not supported by his treatment notes).  Furthermore, Lauerman's assessment was dated July

6    16, 2010, more than a year and a half after her date last insured.  See Tidwell v. Apfel, 161 F.3d 599, 602

7    (9th Cir. 1998) (holding that the fact that a treating physician did not examine plaintiff until more than a year

8    after expiration of her insured status, coupled with other contradictory evidence, fully supported ALJ's

9    determination that his submissions were not convincing).

10          Finally, to the extent plaintiff contends that the ALJ did not properly consider treatment notes from

11   Dr. Druet or Dr. K. Sial at the Temecula Pain Management Group, plaintiff primarily cites to records outside

12   the relevant period. [JS 3-5].  The three treatment reports plaintiff cites from those physicians that are within

13   the relevant period [AR 412-414], along with records from 2007 and 2009, indicate that plaintiff was doing

14   well except for transient flu symptoms, and that her pain and restless leg syndrome were reasonably well-

15   controlled with medication.  [See AR 421 (7/20/07 - "Back and [f]oot are better."); AR 420 (8/17/07 -

16   "Methadone helping [with] pain.  Doing well."); AR 418 (10/12/07 - "[Plaintiff here] for flu . . .

17   [medication] appears to be helping."); AR 417 (11/9/07 - "[Plaintiff] here for  flu."; "symptoms much

18   improved"); AR 415 (1/11/08  - "[Plaintiff] here for flu.  Doing well.  Needs refill."); AR 414 (2/8/08 -

19   "[Plaintiff] here for flu . . . symptoms better."); AR 413 (3/12/08 - "Medications provide good analgesic.";

20   medication at "good level"; plaintiff reports good restless leg syndrome symptom control); AR 412 (4/18/08

21   - noting tooth removed and plaintiff was "[d]oing well on current meds"); AR 410 (5/28/09 - "Pain well

22   managed[.]"); AR 409 (6/24/09 - "States [she is] doing well on current medical regim[e]"); AR 407 (8/27/09

23   - "Pain well managed[.]"); AR 404-406 (9/24/09, 10/22/09, 11/20/09  - "[Plaintiff] here for flu.  Doing

24   well.")].  See Sample v. Schweiker, 694 F.2d 639, 643 (9th Cir. 1982) (where "the totality of evidence could

25   reasonably lead to a conclusion that whatever level of disorder existed was amenable to control," the ALJ

26   properly found that the disorder was not disabling); Odle v. Heckler, 707 F.2d 439, 440 (9th Cir. 1983)

27   (holding that substantial evidence supported the ALJ's conclusion that impairments that were reasonably

28   controlled with medication or other treatment were not disabling); Gross v. Heckler, 785 F.2d 1163, 1166

1   (4th Cir. 1986) ("If a symptom can be reasonably controlled with medication or treatment, it is not

2   disabling."). Accordingly, the ALJ did not commit legal error in evaluating the medical evidence.

3        **Vocational expert testimony**

4        Plaintiff contends that the ALJ erred in not obtaining vocational expert testimony regarding

5   plaintiff's ability to perform her past relevant work and any other work. [JS 14-16].  Plaintiff also contends

6   that the ALJ erred by not providing Dictionary of Occupational Titles ("DOT") codes to reflect occupations

7   that plaintiff could perform regardless of her limitations.  [JS 16-18].

8        A social security disability claimant bears the burden of proving that she cannot perform either the

9   "actual functional demands and job duties of a particular past relevant job" or the "functional demands and

10   job duties of the occupation as generally required by employers throughout the national economy."  Pinto

11   v. Massanari, 249 F.3d 840, 845 (9th Cir. 2001) (quoting SSR 82-62, 1982 WL 31386); see also Burch, 400

12   F.3d at 679; Villa v. Heckler, 797 F.2d 794, 798 (9th Cir. 1986).  The ALJ's obligation is "to make the

13   requisite factual findings to support" the conclusion that the claimant can perform past relevant work.  "This

14   is done by looking at the residual functional capacity and the physical and mental demands of the claimant's

15   past work."  Pinto, 249 F.3d at 844-845 (quoting 20 C.F.R. §§ 404.1520(e) and 416.920(e)).  Information

16   from the DOT, or the testimony of a vocational specialist, may be used to ascertain the demands of an

17   occupation as ordinarily required by employers throughout the national economy at steps four and five of

18   the sequential evaluation procedure.  See SSR 00-4p, 2000 WL 1898704, at *2 ("In making disability

19   determinations, we rely primarily on the DOT (including its companion publication, the SCO) for

20   information about the requirements of work in the national economy.  We use these publications at steps 4

21   and 5 of the sequential evaluation process.  We may also use VEs and VSs at these steps to resolve complex

22   vocational issues.") (footnote omitted).

23        Plaintiff indicated that she worked as a bus driver and secretary doing "clerical work" in the past.

24   [AR 28-29, 115, 124].   A vocational expert also testified that plaintiff previously worked in a "clerical

25   position." [AR 30-31].   The ALJ found that plaintiff was no longer able to perform her past relevant work

26   as a bus driver, but that she could perform her past relevant work as a clerical worker. [AR 13-14]. Plaintiff

27   does not dispute that the ALJ need only find plaintiff capable of performing one of her past jobs in order to

28   determine that plaintiff is not disabled, and that this determination was made at step four of the five-step

1  sequential disability evaluation prescribed by 20 C.F.R. § 416.920(e). Plaintiff's contention necessarily fails

2  because the inquiry about whether a claimant may perform her past relevant work, which is step four, does

3  not require the use of further vocational testimony. See Crane v. Shalala, 76 F.3d 251, 255 (9th Cir. 1996)

4  (holding that ALJ did not err by failing to call a vocation expert because the ALJ determined that the

5  claimant could perform his past relevant work at step four, making it unnecessary to proceed to the fifth step

6  to determine whether he had the RFC to perform other work).

7         Finally, plaintiff also appears to contend that the ALJ erred by relying on the Medical-Vocational

8  Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2 (the "grids"). [JS at 17-18]. This argument fails for

9  the simple reason that the ALJ did not rely on the grids. The grids were not necessary in the ALJ's disability

10  determination because he found that plaintiff could perform her past relevant work and did not make it to

11  step five of the sequential evaluation. See Crane, 76 F.3d at 255 (holding that the determination that the

12  claimant could perform past relevant work negates the argument that ALJ erred in the application of the

13  grids); Alvarez v. Astrue, 2012 WL 3133874, at *8 (C.D. Cal. Aug. 1, 2012) ("The [g]rids are used at Step

14  Five only where there is a determination that a claimant cannot do past relevant work.").

15      **Credibility finding**

16         Plaintiff contends that the ALJ improperly rejected her testimony and other statements about her

17  subjective symptoms. [JS 19-26].

18         Once a disability claimant produces evidence of an underlying physical or mental impairment that

19  is reasonably likely to be the source of the claimant's subjective symptoms, the adjudicator is required to

20  consider all subjective testimony as to the severity of the symptoms. Moisa v. Barnhart, 367 F.3d 882, 885

21  (9th Cir. 2004); Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991) (en banc); see also 20 C.F.R.

22  §§ 404.1529(a), 416.929(a) (explaining how pain and other symptoms are evaluated). Although the ALJ

23  may then disregard the subjective testimony she considers not credible, she must provide specific,

24  convincing reasons for doing so. Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001); see also Moisa,

25  367 F.3d at 885 (stating that in the absence of evidence of malingering, an ALJ may not dismiss the

26  claimant's subjective testimony without providing "clear and convincing reasons"). The ALJ's credibility

27  findings "must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's

28  testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." Moisa, 367

1    F.3d at 885.  If the ALJ's assessment of the claimant's testimony is reasonable and is supported by

2    substantial evidence, it is not the court's role to "second-guess" it.  Rollins v. Massanari, 261 F.3d 853, 857

3    (9th Cir. 2001).

4         In evaluating subjective symptom testimony, the ALJ must consider "all of the evidence presented,"

5    including the following factors: (1) the claimant's daily activities; (2) the location, duration, frequency, and

6    intensity of pain and other symptoms; (3) precipitating and aggravating factors, such as movement, activity,

7    and environmental conditions; (4) the type, dosage, effectiveness and adverse side effects of any pain

8    medication; (5) treatment, other than medication, for relief of pain or other symptoms; (6) any other

9    measures used by the claimant to relieve pain or other symptoms; and (7) other factors concerning the

10   claimant's functional restrictions due to such symptoms.  See 20 C.F.R. §§ 404.1529(c) (3), 416.929(c)(3);

11   see also SSR 96-7p, 1996 WL 374186, at *3 (clarifying the Commissioner's policy regarding the evaluation

12   of pain and other symptoms).  The ALJ also may employ "ordinary techniques of credibility evaluation,"

13   considering such factors as (8) the claimant's reputation for truthfulness; (9) inconsistencies within the

14   claimant's testimony, or between the claimant's testimony and the claimant's conduct; (10) a lack of candor

15   by the claimant regarding matters other than the claimant's subjective symptoms; (11) the claimant's work

16   record; and (12) information from physicians, relatives, or friends concerning the nature, severity, and effect

17   of the claimant's symptoms.  See Light v. Social Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997); Fair v.

18   Bowen, 885 F.2d 597, 604 n.5 (9th Cir. 1989).

19        Because there was no evidence of malingering, the ALJ was required to articulate specific, clear, and

20   convincing reasons to support his negative credibility finding.

21        In his hearing decision, the ALJ summarized plaintiff's subjective symptom testimony and statements

22   in her function reports, and other statements of record as follows[3]:

23        The claimant testified she cannot work because of leg and hand problems and back pain (see

24        also Exhibit 2E).  She reported she has restless leg syndrome, which she asserted was a side

25        effect from her back surgery.  The claimant asserted she has carpal tunnel in both hands and

26   _____

27   [3]   Plaintiff did not challenge the accuracy of the ALJ's summary of plaintiff's subjective
     testimony and in fact quoted it, along with the ALJ's credibility finding, in its entirety. [See JS 20-
28   22].

1   cannot hold or feel things because her hands go numb.  Despite three surgeries for carpal

2   tunnel, she reported she still has problems using her hands and cannot keyboard for more

3   than 5 to 10 minutes. . . .  In regards to self-reported medical treatment, the claimant testified

4   she had back surgery in 2004 and foot surgery in 2008.  The back surgery was a lumbar spine

5   fusion; the foot surgery was to release a wound nerve.  The claimant testified after the foot

6   surgery she felt better and the pinched feeling has only just started to hurt again recently.  She

7   admitted her back surgery helped her sciatic nerve problem, but reported she still has back

8   pain.

9   [AR 11-12].

10   The ALJ found plaintiff's testimony partially credible.  In doing so, the ALJ noted that the two state

11   agency review physicians opined that there was insufficient evidence in the medical records during the

12   relevant period to find any functional limitation.  [AR 13, 218-219, 238-239].  Nonetheless, the ALJ stated

13   that "[u]nlike the State agency review physicians, I was able to hear the claimant's testimony regarding

14   subjective complaints of pain and took those complaints into consideration in formulating the [RFC]."  [AR

15   12].  The ALJ found that plaintiff's RFC was restricted to lifting and/or carrying 20 pounds occasionally and

16   10 pounds frequently; standing and/or walking for six hours in an eight-hour workday with regular breaks;

17   siting for six hours of an eight-hour workday with regular breaks; and frequently using her upper extremities,

18   but not continuously.  [AR 11].   Thus, it is evident from the ALJ's decision that while he did not find

19   plaintiff's subjective symptom testimony entirely credible, he carefully considered that testimony and

20   factored it into his detailed RFC assessment.  To the extent he found her statements not entirely credible,

21   the ALJ articulated specific, clear, and convincing reasons to support his partial rejection of plaintiff's

22   subjective complaints.

23   The ALJ first noted plaintiff's testimony about being laid off.  [AR 11].  At the hearing, plaintiff

24   testified that she was "ready to go back [to work]" after her foot surgery in 2008.  [AR 23.]  But, because

25   she had to take time off for the surgery, it "didn't go real well with the boss" and she was laid off.  [AR 23.]

26   The ALJ was entitled to take this into account in assessing her credibility because it indicated that the real

27   reason plaintiff stopped working was because she was laid off, not because of her condition.  See Bruton

28   v. Massanari, 268 F.3d 824, 828 (9th Cir. 2001) (holding that the ALJ did not err in discrediting the

1  claimant's subjective complaints where the claimant "stated at the administrative hearing and to at least one

2  of his doctors that he left his job because he was laid off, rather than because he was injured"); Copeland

3  v. Bowen, 861 F.2d 536, 542 (9th Cir. 1988) (holding that the ALJ properly discredited the claimant's pain

4  testimony because the plaintiff had been laid off, albeit for medical reasons).  Further, the ALJ noted that

5  during a February 8, 2008 doctor's appointment, just weeks after her alleged onset date, plaintiff admitted

6  that she was applying for a new job.  [AR 414].[4]  Contrary to plaintiff's contention [JS 25], the ALJ was

7  permitted to consider the inconsistency between plaintiff's conduct in attempting to find work and her

8  allegations of disabling subjective symptoms.  See Demaria v. Apfel, 1998 WL 30015, at *5 (N.D. Cal.

9  1998) (holding that the claimant's admission that he was actively looking for work but was unable to get

10  hired was a "tacit admission that [he] could perform substantial gainful activity," and that "[the claimant's]

11  job search efforts discredited his allegations of disability") (citing Sample, 694 F.2d at 642); Lenhart v.

12  Astrue, 252 F. App'x 787, 789 (9th Cir. 2007) (holding that it was not unreasonable for the ALJ to find that

13  the claimant exaggerated symptoms based on fact that he applied for a job, among other factors); Copeland,

14  861 F.2d at 542 (holding that the ALJ properly discredited the claimant's pain testimony because he held

15  himself out as available for work).

16       Plaintiff also challenges the ALJ's reliance on her statements in a pain questionnaire that her

17  medications were helping her "very much." [JS 25.]  The ALJ noted that plaintiff stated in a disability report

18  that she had to rest all the time and was unable to do regular housework and cleaning.  [AR 11, 140].  The

19  ALJ also noted that in a subsequent disability report plaintiff said it was becoming more difficult to "do fun

20  things" and housework.  [AR 12, 153.]  He concluded that this conflicted with her statements in a pain

21  questionnaire that her medication helps her "very much."  [AR 12, 121].  The ALJ further concluded that

22  plaintiff's report that her medication was helping conflicted with her allegations of disabling back pain.  [AR

23  12]. The ALJ could properly consider these conflicts in assessing plaintiff's credibility.  See Tonapetyan,

24  242 F.3d at 1148 (stating that the ALJ can use "ordinary techniques of credibility evaluation" and may rely

25  on inconsistent statements in testimony) (citing Fair, 885 F.2d at 604 n.5); Matthews v. Shalala, 10 F.3d 678,

26

27       _____

28       [4]    Although not mentioned by the ALJ, about six months before the alleged disability onset date
plaintiff also stated that she "wants to work" despite complaints of severe foot pain.  [AR 422].

1  679-680 (9th Cir. 1993) (holding that the ALJ properly considered the claimant's inconsistent statements

2  as part of his credibility analysis); see also Warre v. Comm'r, Soc. Sec. Admin., 439 F.3d 1001, 1006  (9th

3  Cir. 2005) ("Impairments that can be controlled effectively with medication are not disabling.").

4  　　　　Contrary to plaintiff's argument [JS 23-25], the ALJ was allowed to consider the lack of objective

5  medical evidence corroborating the alleged severity of plaintiff's subjective symptoms during the relevant

6  period in 2008. [AR 12-13].  See Burch, 400 F.3d at 681 ("Although lack of medical evidence cannot form

7  the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility

8  analysis.").  The ALJ also said that he had read and considered the medical records predating the relevant

9  period to gain an "overall picture of [plaintiff's] medical conditions" of "carpal tunnel syndrome bilaterally,

10  chronic back pain, and lumbar fusion." [AR 12].  The ALJ noted that plaintiff reported undergoing lumbar

11  spine fusion in 2004 as well as three prior carpal tunnel surgeries between 2000 and 2003.  [AR 12].

12  Plaintiff underwent a carpal tunnel release in September 2000 [AR 201, 758, 1042], a "re-do" of her carpal

13  tunnel release in December 2001 [AR 209], and a third procedure that included a nerve graft in 2003. [AR

14  758, 845; see AR 187 (worker's compensation report concluding that plaintiff was "temporarily totally

15  disabled" in October 2001), AR 775-776, 779-780 (indicating that plaintiff settled her worker's

16  compensation cases in 2001 and 2004)]. Plaintiff, however, alleges that she did not become disabled until

17  January 2008.  The ALJ justifiably concluded that the lack of objective medical evidence during the relevant

18  period undermined the credibility of plaintiff's subjective allegations.  Moreover, as noted above, plaintiff's

19  sparse treatment records from the relevant period indicate that her pain and other symptoms generally were

20  well-managed, and none of those records document complaints about her hands. [See AR 412-414].  See

21  Burch, 400 F.3d at 681 (holding that the ALJ did not err in discrediting the claimant's pain testimony where

22  she did not seek treatment for a period of four months, and observing that where the claimant's pain was

23  "not severe enough to motivate her to seek" consistent treatment, her treatment history was "powerful

24  evidence regarding the extent to which she was in pain"); Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir.

25  1995) (holding that the ALJ properly discounted subjective pain complaints in view of a three-year gap in

26  treatment and treating physician's reliance on conservative treatment).

27  　　　　Plaintiff fails to discuss, or even acknowledge, the ALJ's other reasons for finding her not credible.

28  Therefore, plaintiff has waived any challenge to the remaining aspects of the ALJ's credibility finding.  See

1   Greger v. Barnhart, 464 F.3d 968, 973 (9th Cir. 2006) (holding that claimant waived issues because he did

2   not raise those issues before the district court); Bergfeld v. Barnhart, 361 F. Supp. 2d 1102, 1110 (D. Ariz.

3   2005) ("A reviewing federal court will only address the issues raised by the claimant in his appeal from the

4   ALJ's decision.").

5          Notwithstanding plaintiff's waiver of the issue, the ALJ was entitled to consider additional

6   inconsistencies between plaintiff's subjective allegations, her own testimony and other statements, and other

7   evidence in the record.  See generally Parsons v. Comm'r, Soc. Sec. Admin., 2012 WL 4468542, at *7 (E.D.

8   Cal. Sept. 26, 2012) (noting the plaintiff's failure to address an aspect of ALJ's credibility determination,

9   but addressing that determination on the merits because it was consistent with the law and supported by

10  substantial evidence).  The ALJ noted that plaintiff stated in a pain questionnaire that she could not stand,

11  walk, or sit for more than one hour. [AR 11, 121].  Yet in that same questionnaire she later said she could

12  only walk 30 feet, stand for 10 minutes at a time, and sit for 30 minutes. [AR 123].  The ALJ also discussed

13  inconsistencies in plaintiff's testimony and other statements she made during medical appointments. [AR

14  11-12].  As noted above, plaintiff testified that after her 2008 foot surgery she was ready to go back to work.

15  [AR 23].  She explained that her foot felt better after the surgery and the recovery was "okay in the

16  beginning." [AR 24].  She did not feel the same "pinching" when she would walk until almost two years

17  later, well after the relevant period. [AR 24].  Plaintiff also admitted that her 2004 back surgery eliminated

18  her sciatic nerve pain that ran down her right leg, although she said she still had back pain. [AR 25].

19  Further, plaintiff admitted during an appointment in February 2008 that her restless leg syndrome was

20  getting "better," and that by March 2008 she had "good" symptom control of the restless leg syndrome. [AR

21  413-14].  The ALJ properly relied in part on these inconsistencies to discount the alleged severity of

22  plaintiff's subjective symptoms.

23  ///

24  ///

25  ///

26

27

28

12

1    The ALJ's reasons for partially rejecting plaintiff's subjective testimony were specific, clear, and

2    convincing, and therefore the ALJ did not err in evaluating the credibility of plaintiff's subjective

3    complaints.

4                                                    **Conclusion**

5    For the reasons stated above, the Commissioner's decision is supported by substantial evidence and

6    is free of legal error.  Accordingly, the Commissioner's decision is **affirmed**.

7    **IT IS SO ORDERED.**

8

9    December 9, 2013

10

11    _____

12    ANDREW J. WISTRICH
      United States Magistrate Judge

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28